No. 26-2040

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

THE SUSTAINABILITY INSTITUTE, *et al.*,
*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States,
*et al*.,
*Defendants-Appellants*.

**APPELLEES' RESPONSE IN OPPOSITION TO APPELLANTS'
MOTION FOR STAY PENDING APPEAL**

Kimberley Hunter
Irena Como
Nicholas S. Torrey
Carl T. Brzorad
Ben Grillot
Spencer Gall
SOUTHERN ENVIRONMENTAL LAW
CENTER
*136 East Rosemary Street, Suite 500*
*Chapel Hill, NC 27514*
(919) 967-1450
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org
cbrzorad@selc.org
bgrillot@selc.org
sgall@selc.org

Graham Provost
Elaine Poon
Cassandra Crawford
PUBLIC RIGHTS PROJECT
*490 43rd Street, Unit #115*
*Oakland, CA 94609*
(510) 738-6788
graham@publicrightsproject.org
elaine@publicrightsproject.org
cassandra@publicrightsproject.org

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................. 1

    A. The Challenged District Court Orders........................................... 1

    B. The ECJ Program ........................................................................... 3

    C. EPA Terminates the ECJ Program "for Policy Reasons" ........... 4

    D. Congress Retains the ECJ Program and Most of Its Funding.................. 5

ARGUMENT ................................................................................................... 7

    I. Defendants are Not Likely to Succeed on Appeal. ................................. 7

    A. Defendants Have Not Established Appellate Jurisdiction. ........................ 7

    B. Congress Did Not Rescind All ECJ Program Funding. ............................. 9

        1. ECJ Program Funds Remain Available.................................. 10

        2. A Termination Notice Does Not Render Grant Funds "Unobligated".................................................................. 10

        3. Congress Rescinded Only the ECJ Program Funds That Were Unobligated When OBBBA Became Law ......................................... 12

    C. Defendants' Other Arguments Fail........................................................... 15

    II. The Equities Overwhelmingly Disfavor a Stay...................................... 18

CONCLUSION .............................................................................................. 23

CERTIFICATE OF COMPLIANCE ............................................................. 25

CERTIFICATE OF SERVICE ...................................................................... 26

## INTRODUCTION

Defendants[1] ask this Court to stay an interlocutory order in their continued bid to flout an ongoing statutory mandate to implement the Environmental and Climate Justice Block Grants Program ("ECJ Program").

Along the way, Defendants take appellate jurisdiction for granted, miscast the District Court's orders and the factual record, distort the equities, and contradict their own statements to other courts. Most flagrantly, Defendants insinuate the District Court enjoined them to pay money to specific prior grantees. Not so. *See, e.g.*, App. 4 ("Plaintiffs do not . . . seek reinstatement of their grants."). Instead, the District Court simply confirmed Defendants are obligated to comply with Congress's mandate to implement the ECJ Program. Defendants have come nowhere close to "showing that the circumstances justify" a stay pending appeal. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Their motion should be denied.

## BACKGROUND

### A.    The Challenged District Court Orders

In *Sustainability Institute v. Trump*, 165 F.4th 817 (4th Cir. 2026), this Court vacated injunctions to reinstate Plaintiffs' individual grants under the ECJ Program and other programs not involved in this appeal. However, the Court declined to

---

[1] Defendants relevant here include the Environmental Protection Agency ("EPA") and its Administrator, the Office of Management and Budget ("OMB") and its Director, and the President of the United States.

1

address claims challenging the termination of entire grant programs, leaving those for the District Court to consider in the first instance. *Id.* at 829 n.8 & 833–34.

On remand, Plaintiffs filed a supplemental complaint focused on the termination of the ECJ Program and two other programs involving other agencies.[2] D. Ct. Dkt. No. 203. Plaintiffs moved for partial summary judgment as to Defendants' unlawful termination of the ECJ Program, seeking an order that would require Defendants to implement the ECJ Program on the terms mandated by Congress. D. Ct. Dkt. No. 204 at 11. As Plaintiffs explained, "restore the program" is the proper remedy in this situation. Indeed, Defendants themselves volunteered as much during oral argument in another case involving government interference with a different grant program. Supp. App. 11, 17. Plaintiffs sought (and still seek) only the ability to participate in the ECJ Program, which Defendants may implement as they choose within the parameters Congress imposed. D. Ct. Dkt. No. 204 at 11–13.

On June 11, 2026, the District Court granted, in part, Plaintiffs' motion for partial summary judgment. App. 12. The District Court rejected Defendants' argument that a budget reconciliation bill commonly called the One Big Beautiful Bill Act ("OBBBA"), Pub. L. No. 119-21, 139 Stat. 72 (July 4, 2025), mooted the

---

[2] The other two programs and associated claims involve the Department of Transportation and the Department of Energy. Litigation over those claims is ongoing below.

2

case by rescinding all funding for the ECJ Program, recognizing that such an expansive reading of the recission would be an impermissible repeal by implication. App. 3.

The District Court vacated Defendant EPA's decision to terminate the entire ECJ program because the decision violated the statute commanding EPA to implement the ECJ Program, concluding that "Defendants' guidance closing and premature shuttering of the ECJ Program and refusal to administer it are illegal." App. 10. However, the District Court explicitly declined to enter an injunction. App. 11.

After EPA informed Plaintiffs it did "not believe that any specific agency action [was] required to comply with the Court's vacatur," and that EPA would continue to take actions to terminate ECJ Program grants notwithstanding the vacatur, Plaintiffs moved to enforce the judgment and clarify relief. App. 34–41. On July 22, 2026, the District Court "clarifie[d] that the EPA must comply with its statutory obligations to administer the ECJ Program through September 30, 2026." App. 14.

## B.    The ECJ Program

In 2022, Congress enacted the Inflation Reduction Act, Pub. L. No. 117-169, 136 Stat. 1818 (Aug. 16, 2022), which established a new federal grantmaking program within Section 138 of the Clean Air Act for "Environmental and Climate

3

Justice Block Grants"—the ECJ Program. *Id.* § 60201, 136 Stat. at 2078 (codified at 42 U.S.C. § 7438). Congress appropriated $3 billion to EPA, "to remain available until September 30, 2026," 42 U.S.C. § 7438(a)(1), (2), and mandated that EPA "shall use" this funding "to award grants" to "eligible entities," to carry out certain environmental, public health, and resiliency projects benefitting disadvantaged communities. *Id.* § 7438(b). EPA received thousands of applications for grants and, following a competitive process, awarded grants to a few hundred of the most qualified applicants.

### C.    EPA Terminates the ECJ Program "for Policy Reasons"

In January 2025, President Trump issued a pair of executive orders targeting federal programs funded by the Inflation Reduction Act or involving environmental justice. Exec. Order No. 14,154, 90 Fed. Reg. 8,353 (Jan. 29, 2025); Exec. Order No. 14,151, 90 Fed. Reg. 8,339 (Jan. 29, 2025). After initially freezing all grants awarded under the ECJ Program, EPA soon decided to eliminate the ECJ Program entirely. On February 25, 2025, the Assistant Deputy Administrator "decided that certain grant programs"—including the entirety of the ECJ Program—"should be terminated for policy reasons." App. 18. The resulting directive went to agency staff with specific instructions about how to carry out the termination decision. App. 18, 21–25. Over the next few months, EPA implemented the decision by sending many (but not all) ECJ Program grantees

4

boilerplate letters stating their grants had been terminated and informing them of their rights to administratively appeal and seek reimbursements for certain expenses. *See, e.g.*, D. Ct. Dkt. No. 128-8 at 1–2 (EPA_00294499 to EPA_00294500) (termination letter template).

However, for some ECJ Program grantees including Plaintiffs, EPA did not send termination letters until late July 2025. D. Ct. Dkt. No. 204 at 8.[3]

### D.    Congress Retains the ECJ Program and Most of Its Funding.

On July 4, 2025, Congress enacted the OBBBA, which repealed certain provisions of the Inflation Reduction Act and rescinded portions of certain funding appropriated under that law.

For the ECJ Program, unlike other grant programs funded by the Inflation Reduction Act, Congress left the statutory mandate in place and rescinded only a limited subset of the $3 billion originally appropriated. The relevant provision of the OBBBA states in full:

> SEC. 60016. RESCISSION OF FUNDING FOR ENVIRONMENTAL AND CLIMATE JUSTICE BLOCK GRANTS.
>
> The *unobligated balances* of amounts made available to carry out section 138 of the Clean Air Act (42 U.S.C. 7438) are rescinded.

---

[3] A comprehensive overview of EPA's decision and action to terminate the ECJ Program appears in Plaintiffs' motion for partial summary judgment. D. Ct. Dkt. No. 204 at 5–8.

§ 60016, 139 Stat. at 156 (emphasis added). The Chair of the House subcommittee with jurisdiction over the ECJ Program explained that recission of "unobligated balances" would affect only funds that were "unobligated at the time of passage." Supp. App. 146. He explained the OBBBA would not rescind funds tied to grants that had been awarded because Congress "can't rescind expenditures that have already been obligated." Supp. App. 145–46. If those funds later became unobligated, they could potentially be subject to a "future recission," but "for purposes of this reconciliation, [Congress] can't look at the crystal ball and decide what might happen in the future." *Id.*

EPA recently disclosed that approximately $479 million in ECJ Program funding "was recorded as unobligated in EPA's financial systems on July 4, 2025," when the OBBBA became law. App. 43. That is roughly consistent with the contemporaneous understanding of the non-partisan Congressional Budget Office, which calculated that the OBBBA rescinded $516 million from the ECJ program. Supp. App. 148.

According to EPA, the agency currently has over $445 million in ECJ Program funding on hand. *See* App. 44 ("[A]s of July 28, 2026, EPA's financial systems reflect $445,664,391.57 in recently deobligated ECJ funding . . . . [which] has not yet been rescinded[.]"). In addition, there are currently approximately 73 grants "are still financially 'open' in EPA's financial system, meaning closeout has not concluded . .

. ." App. 49. For some of these grants, funding is easily accessible to grantees in their government accounts. Exhibit 1, Attachment A. Another $1.1 billion in ECJ Program funding is apparently available to EPA upon request to Defendant Office of Management and Budget. *Id*.

## ARGUMENT

The Court should deny a stay pending appeal. Defendants are not likely to succeed, their claims of injury do not hold up, and the equities overwhelmingly disfavor a stay. *Nken*, 556 U.S. at 426.

## I. Defendants are Not Likely to Succeed on Appeal.

Defendants' motion suffers from three fatal flaws: (1) they have not shown this Court has appellate jurisdiction, (2) they misread the One Big Beautiful Bill Act and contradict their own prior acknowledgment that it rescinded only then-unobligated balances, and (3) their critiques of the District Court's order are irrelevant or off-base.

### A. Defendants Have Not Established Appellate Jurisdiction.

This Court's appellate jurisdiction normally is limited to "final decisions" of district courts. 28 U.S.C. § 1291. "Ordinarily, a district court order is not 'final' until it has resolved all claims as to all parties." *Design Gaps, Inc. v. Distinctive Design & Constr. LLC*, 162 F.4th 452, 470 (4th Cir. 2025) (citation and quotations omitted). Defendants' failure to even gesture to appellate jurisdiction should doom

7

their motion. *See Nken*, 556 U.S. at 433–34 ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion.").

The challenged Orders are not final because they do not resolve all claims as to all parties. First, litigation involving other grant programs and other agencies is ongoing below. *See supra* at 2, n.2. Second, the District Court explicitly left unresolved Plaintiffs' *ultra vires* and nonstatutory claims involving the ECJ Program. App. 11–12. Absent a partial final judgment under Federal Rule of Civil Procedure 54(b), which no party requested and which the District Court did not enter, this appeal cannot proceed under 28 U.S.C. § 1291.

To the extent Defendants meant to rely on 28 U.S.C. § 1292(a)(1), which provides for interlocutory review of orders "granting . . . injunctions," this record does not support an immediate appeal. Although Defendants decry "the district court's injunction," Mot. 24, 27, the District Court explicitly refused to enjoin Defendants. App. 11. Congress—not the District Court—commanded Defendants to implement the ECJ Program and use the funding available "to award grants" by September 30, 2026. 42 U.S.C. § 7438(a)(1), (b)(1). The District Court merely acknowledged that statutory mandate and vacated a directive countermanding it. App. 13-14. This is not equivalent to an injunction. *See, e.g.*, *Trump v. CASA, Inc.*, 606 U.S. 831, 847 n.10 (2025); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv.*

8

*Sys.*, 603 U.S. 799, 826 (2024) (Kavanaugh, J., concurring). Courts often restate statutory commands. If every such instance were immediately appealable as an injunction, the policy against piecemeal litigation embodied in 28 U.S.C. § 1291 would be eviscerated.

### B.     Congress Did Not Rescind All ECJ Program Funding.

On the merits, Defendants' primary argument is that the OBBBA rescinded *all* ECJ Program funding, eliminating their obligation to comply. This is wrong. "[R]epeals by implication are not favored." *Morton v. Mancari*, 417 U.S. 535, 549 (1974), especially "in the appropriations context." *Maine Cmty. Health Options v. U.S.*, 590 U.S. 296, 315 (2020) (cleaned up). Here, far from clearly manifesting an intent to repeal this program, Congress chose to repeal *other* programs while leaving the statutory text of Section 138 intact. *E.g.*, OBBBA § 60002, 139 Stat. at 154 (repealing the statutory mandate to implement the Greenhouse Gas Reduction fund).

The plain language of the OBBBA, its legislative history, and basic principles of federal fiscal law all make clear that the recission was limited to funding that was "unobligated" when the OBBBA was enacted; Congress did not set up an open-ended rescission process to zero out the program. And certainly, the rescission did not extend to funding associated with grants where the termination process is still not yet finalized. *See* App. 49–50.

9

Defendants previously claimed this case was moot because, they argued, all grant funds for which they issued a notice of termination (1) instantly became unobligated, and (2) were rescinded the moment each set of funds became unobligated. Dkt. 205 at 10–16; Dkt. 210 at 1–13. Here, Defendants do not argue mootness, but maintain "there are no available ECJ funds." Mot. at 10. However framed, both prongs of their argument are wrong.

### 1. *ECJ Program Funds Remain Available*

Defendants do not attempt to satisfy the standard for mootness. That is not surprising because a significant portion of the grant funds at issue here have *not* been rescinded. App. 49 (as of July 28, 2026, approximately 73 ECJ grants are still financially "open" in EPA's financial system). Some, in fact, remain easily accessible by Plaintiffs. *See, e.g.*, Exhibit 1, Attachment A. Because funds are available, the issues remain live and Plaintiffs retain an interest in the outcome. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). And while Defendants try to portray the District Court's Order as requiring them "to obligate more than $1 billion," a figure they claim cannot be obligated at this point, the Order does not specify a set dollar amount, making this is a red herring. Mot. at 10.

### 2. *A Termination Notice Does Not Render Grant Funds "Unobligated"*

Further, EPA's letters purporting to terminate ECJ grants did not instantly deobligate those funds. They were the start, not the end, of a process that may or

10

may not ultimately end in termination and then, eventually, deobligation. Under binding regulations, EPA "must provide the recipient with an opportunity to object and provide information challenging" any termination decision. 2 C.F.R. § 200.342. Until that process is complete, there is no final action and the awarded funds remain obligated. *See id.* at § 1500.17(b), (d), 60 Comp. Gen. 591 (1981),[4] 70 Fed. Reg. 3629, 3630 (January 26, 2005) ("Fair and consistent dispute resolution remains a central principle of administering EPA's assistance programs.). That finality had not been reached on July 4, 2025, for most grants, and has still not been reached for the 73 open awards, as Defendants admit.

In this case, a majority of ECJ grantees took advantage of their appeal rights. Defendants did not engage with those appeals but dismissed them as moot because funding had been rescinded. *See, e.g.*, Exhibit 2, Attachment A. But this reasoning is circular. Grants could not have become deobligated until the appeals had been assessed and the question of the legality of the appeal was final. Defendants cannot claim an excuse of mootness by declaring it.

Moreover, even if EPA had been successful in showing its terminations were lawful, the agency cannot deobligate funds until the 120-day closeout process is complete and the specific amount of funds remaining quantified. As Plaintiffs

---

[4] Although 60 Comp. Gen. 591 related to a procurement contract, its reasoning applies equally to grants.

11

explained to the District Court, this is consistent with both current and longstanding EPA practice. *See* Supp. App. at 132 (email from EPA's director of the Office of the Controller explaining that EPA "doesn't process a deobligation until we get a final financial report."); *see also* Pls.' Mot. at 26–28, Dkt. No. 204.

### 3. *Congress Rescinded Only the ECJ Program Funds That Were Unobligated When OBBBA Became Law*

The One Big Beautiful Bill Act was clear that only the *"unobligated balances"* of amounts made available to carry out Section 138 of the Clean Air Act were rescinded. OBBBA § 60016, 139 Stat. at 156. As EPA admits, only "$479,450,776.11 was recorded as unobligated in EPA's financial systems on July 4, 2025" when the OBBBA was passed. App. 43. This amount was properly rescinded by Congress. The Congressional Budget Office listed a similar amount when it tallied the financial impact of the bill. *See supra* 6; Supp. App. 149.

The remainder of the funds, more than $2 billion, were obligated at the time of the OBBBA's passage and were not rescinded. This is clear from the text. "Unobligated" is a past participle, which the Supreme Court has explained is "'[a] verb form indicating past or completed action'" *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 39 (2008) (quoting American Heritage Dictionary 1287 (4th ed. 2000)). A past participle has "the characteristics of both verb and adjective" and "typically expresses completed action." Merriam-Webster's Collegiate Dictionary at 903, 907 (11th ed. 2014). For example, in interpreting the

12

Bankruptcy Code, the Supreme Court explained that the use of the past participle "confirmed" to modify the noun "plan" is most naturally read to refer to a plan "that has been confirmed in the past," placing a temporal limitation on the statute. *Fla. Dep't of Revenue*, 554 U.S. at 39–41. The same reasoning here means OBBBA rescinded balances that were unobligated at the time of enactment—not future balances that might later become unobligated.

Defendants cite the Dictionary Act to argue that because the word "are" is in the present tense, Congress rescinded any funds that might become unobligated in the future. Mot. at 11–12. But Defendants' argument ignores *what* Congress rescinded on July 4, 2025: the "balances" that were "unobligated" at that time. The Government Accountability Office's Glossary of Terms Used in the Federal Budget Process defines "unobligated balance" as "[t]he portion of obligational authority that *has not yet* been obligated." *See* U.S. Gov't Accountability Office, *A Glossary of Terms Used in the Federal Budget Process* 72 (Sept. 2005) (emphasis added), https://www.gao.gov/assets/gao-05-734sp.pdf.

Moreover, Defendants' argument misapplies the Dictionary Act, which makes clear that where "the context indicates otherwise," present-tense verbs do *not* include the future tense. 1 U.S.C. § 1. Here, Congress stated that unobligated balances "are rescinded," using another past participle that describes a completed

13

action: in a single, completed action on July 4, 2025, Congress reclaimed then-unobligated balances.

Defendants' cited case, *Hicks v. Frame*, 145 F.4th 408 (4th Cir. 2025), makes clear the distinction between the usages referenced in the Dictionary Act and the rescission language here. Where statutes, such as the habeas statute in *Hicks*, describe the conduct that satisfies certain requirements, it makes sense to read the use of the present tense to include future conduct as well, because the contrast is between ongoing circumstances and wholly past ones. In *Hicks,* for example, this Court distinguished between circumstances that currently rendered a process ineffective and those that did so only in the past. *Id.* at 419. But here, Congress's rescission was the operative statutory language, and the Supreme Court has explained that reading an absent word into operative statutory language "would result 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court." *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926)).

Congress's broader choices in the statute provide context that confirms the rescission was not perpetual. Congress prospectively repealed other grant programs created by the Inflation Reduction Act in their entirety, while choosing to leave the ECJ Program in place. *See, e.g.,* OBBBA § 60002, 139 Stat. at 154 (stating that

14

Section 134 of the Clean Air Act is "repealed" and rescinding unobligated balances). That choice supports Plaintiffs' reading and contradicts Defendants'.

Confirming this intent, when Representative Morgan Griffith—OBBBA proponent and then-Chair of the Environmental Subcommittee—was asked about this issue, he made clear the bill did not impact already-awarded grants. Pls.' Mot. at 27–28, Dkt. No. 204. Rep. Griffith explained that if awarded funds were later successfully de-obligated, their recission would need to be addressed in a "future recission." Supp. App 145. EPA has admitted the same. Supp. App. 165–67 (counsel for EPA asserting that funds "are unobligated within the meaning of H.R. 1" only if there is not a "legally binding agreement that's operative . . . *at the time of recission*.")(emphasis added).

### C.     Defendants' Other Arguments Fail.

Defendants offer a handful of fallback arguments, but none succeed. *First*, Defendants' complaint that the Orders somehow "impose . . . new affirmative obligations" can be quickly discarded. Mot. at 13. Congress mandated that EPA "shall" use the funding to award grants to recipients and projects that met specific criteria. 42 U.S.C. § 7438(b). Vacating EPA's program termination simply reinstates the status quo under which the agency must obey Congress. *See, e.g.*, *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) (effect of vacatur was to "automatically resurrec[t]" the prior standard). Plaintiffs

agree that vacatur does not require EPA to take any "*specific* new actions," Mot. at 14 (emphasis added), and acknowledge EPA retains discretion to decide how to implement Congress' statutory command. But EPA may not refuse to act, flouting the statutory mandate.

*Second*, although Defendants concede the District Court's vacatur is consistent with *NIH*, they nonetheless attempt another Tucker Act argument by suggesting that any remedy requiring compliance with a statutory obligation to disburse funding is prohibited. Mot. at 16. Not so: in *NIH*, Justice Barrett was clear that district courts had the power to prohibit Defendants from relying on vacated guidance moving forward. *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2662 n.1 (2025) (Barrett, J., concurring). Here, Defendants may not rely on the vacated program termination decision to evade their statutory directives. Ordering compliance does not run afoul of the Tucker Act just because it involves money. *See, e.g.*, *Woonasquatucket River Watershed Council, et al. v. U.S. Dep't of Agric.*, et al., No. 25-1428, 2026 WL 2279789, at \*18 (1st Cir. Aug. 7, 2026) (explaining that vacatur that may result in disbursement of funds does not exceed District Court's authority (citing *Bowen v. Massachusetts*, 487 U.S. 879, 909–11 (1988); *New York v. Trump*, 171 F.4th 1, 30 (1st Cir. 2026)).

Defendants claim making new awards in the statutory timeframe is "extremely unlikely," Mot. at 16, but to the extent that is true it is a problem of

16

their own making. Defendants have had a year and half to re-envision the ECJ program since they began to terminate grants but have taken no steps to do so. And while Defendants suggest reinstating previously terminated awards would be "extremely difficult," Defendants' own declaration makes clear that "reinstating the approximately 73 open grants would require approximately three weeks." App. 49-50. Defendants' dilatory behavior cannot allow them to evade the law.

*Finally*, Defendants are wrong that the Impoundment Control Act ("ICA") eliminates the mandatory requirement to disburse these funds. Mot. at 20–21. First, Defendants waived this argument. *U.S. v. Evans*, 404 F.3d 227, 236 n.5 (4th Cir. 2005). They never raised an ICA defense in briefing on Plaintiffs' motion for summary judgment, their parallel motion to dismiss, or their answer. *See* D. Ct. Dkt. Nos., 206, 210.

Moreover, the argument is meritless. Nothing in the ICA erases the statutory mandate or "preclude[s]" Plaintiffs' ability to enforce it through APA claims. 5 U.S.C. § 701(a)(1); *see also Weyerhauser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22–23 (2018) (noting "strong presumption" against statutes precluding judicial review of APA claims (citation and quotations omitted)). Indeed, "[n]othing contained in [the ICA] . . . shall be construed as . . . affecting in any way the claims or defenses of any party to litigation concerning any impoundment." 2 U.S.C. § 681. The ICA does not "affect[] in any way" Plaintiffs' APA claims to

17

enforce the Clean Air Act. *Id*. Where, as here, "Defendants have run afoul . . . [of] the underlying statute that imposes fundamental programmatic duties," the ICA poses no bar to APA claims. *Child Trends, Inc. v. U.S. Dep't of Educ.*, 795 F. Supp. 3d 700, 721-22 (D. Md. 2025).

Defendants' reliance on *Global Health Council v. Trump* is misplaced. That case dealt with the distinct question of whether private litigants can *directly* enforce the ICA through an APA suit; the court did "not decide whether the ICA precludes suits under the APA to enforce appropriations acts." 153 F.4th 1, 20 n.17 (D.C. Cir. 2025). "[A]s *Global Health Council* acknowledged, the holding did not extend to the question of whether the existence of the Impoundment Control Act also precluded 'contrary-to-law claims . . . based on' other 'substantive provisions,' such as appropriations acts." *Neguse v. U.S. Imm. & Customs Enf.*, 813 F. Supp. 3d 45, 88–89 (D.D.C. 2025); *See also AIDS Vaccine Advoc. Coal. v. United States Dep't of State*, 803 F. Supp. 3d 164, 177–78 (D.D.C. 2025) (on remand from *Global Health Council*, concluding that the panel decision did not "impede[] Plaintiffs from bringing an APA action to enforce the appropriations acts").

## II.     The Equities Overwhelmingly Disfavor a Stay

The equities weigh heavily against a stay. Defendants claim a stay is necessary to avoid "a severe separation-of-powers harm" to the political branches, but the opposite is true. *Contra* Mot. 23. Defendants have flouted the separation of

powers by defying an ongoing statutory mandate and a stay would exacerbate the harm. Congress created the ECJ Program, commanded EPA to implement it by September 30, 2026, chose not to repeal the ECJ Program when repealing other IRA-funded programs, and left the majority of the ECJ Program's funding intact. *See supra* 5–6. Especially with the September 30, 2026 deadline approaching, a stay would undermine—not vindicate—Congress's decisions.

Meanwhile, any conflict between the President's policy preferences and Congress's is not a cognizable injury to Defendants. They may wish Congress did not command EPA to implement the ECJ Program and award grants, but that choice belongs to Congress alone. "[T]he President and federal agencies may not ignore statutory mandates or prohibitions merely because of policy disagreement with Congress." *In re Aiken County*, 725 F.3d 255, 259–60 (D.C. Cir. 2013) (majority op. of Kavanaugh, J.); *see also Learning Res., Inc. v. Trump*, 607 U.S. 229, 268 (2026) (Gorsuch, J., concurring) ("[W]hen it comes to legislative power, Congress is the principal and executive officials are the agents."). The Executive Branch suffers no constitutional harm from being required to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

Next, Defendants conjure harm to the public fisc, but Congress commanded that funding for the ECJ Program be awarded via grants to governments and nonprofit organizations to tackle congressional priorities like "reducing indoor

19

toxics and indoor air pollution." 42 U.S.C. § 7438(b)(2)(D). That mandate remains in place.

In any event, Defendants exaggerate the fiscal impact by eliding how grants actually work. Defendants assert that the District Court's orders require the "obligation of more than $1 billion that the government may never recover." Mot. at 22. First, Congress directed Defendants to obligate this funding. *See supra* 3–4, 15–16. Moreover, Defendants would not disburse all available funds to grantees immediately. EPA's grant management regulations require stringent fiscal controls that strictly limit the amount and timing of any advance payments and generally require EPA to only reimburse expenses incurred consistent with a recipient's grant agreement. 2 C.F.R. § 200.305(b)(2). Thus, assuming EPA reinstated or awarded new grants during this appeal, the expenses grantees may incur during that time are far less than Defendants claim.

Finally, to the extent Defendants complain that meeting their statutory deadline now will be challenging, they put themselves in this position. "[A]dministrative agencies cannot survive judicial review simply by making mistakes that are so colossal that the sky will fall if a court reviews them." *Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, No. 23-40605, 2026 WL 2322331, at *8 (5th Cir. Aug. 11, 2026) (responding to agency arguments that vacatur "will create a host of practical problems" by concluding that "[t]he APA

20

. . . does not embrace a too-big-to-vacate principle"). EPA has known for over a year that terminating the ECJ Program was illegal,[5] admitted the OBBBA did not zero out all funding for the ECJ Program, and volunteered that the remedy in this circumstance is to "restore the program." Supp. App. 10, 11, 17, 63 (Counsel for EPA discussing proper remedy for failure to implement a mandated grant program); *see also* Supp. App. 165-66 (Counsel for EPA asserting that binding agreements "operative at the time of [the OBBBA]" were not rescinded). At this point, EPA cannot use the upcoming statutory deadline to evade compliance.

Meanwhile, Defendants are wrong that Plaintiffs' interest in restoration of a Congressionally mandated program to improve lives in overburdened communities is "relatively minimal." Mot. at 24. All these organizations are well qualified for the program, have excellent projects ready to go and are eager for the opportunity

---

[5] *See e.g.,* D.C. Dkt. No. 153 at 1 ("Defendants do not contest judgment on the merits of Plaintiffs' APA claims.")

to compete for funding.[6] If a stay is granted, but Plaintiffs later succeed on the merits, Defendants surely will argue the statutory deadline has passed.[7]

Defendants' argument that plaintiffs "may seek damages in the Court of Federal Claims" has no place in the equities. Not only is that remedy entirely distinct from what Plaintiffs seek here, but the federal government has been arguing in similar cases before the Court of Federal Claims that no such damages are available. *See, e.g.,* Mot. at 15, 20, *Maryland Clean Energy Center v. United States*, No. 1:25-cv-01738 (Fed. Cl. Jun. 22, 2026), ECF No. 73 (arguing against expectation interest and asserting that for similar terminated grants, "plaintiffs have in fact suffered no monetary damages").

---

[6] Plaintiffs' standing is equally clear. Plaintiffs have suffered concrete injuries because the unlawful termination of the ECJ Program has left them "walled off from an entire category of projects for which [they are] qualified, prepared, and eager to compete," a well-recognized form of injury in fact. *Coal. of MISO Transmission Customers v. FERC*, 45 F.4th 1004, 1016 (D.C. Cir. 2022); *see also, e.g.*, *Child Trends, Inc.*, 795 F. Supp. 3d at 718 ("Plaintiffs ask for . . . only the opportunity to compete for grants and subcontracts . . . a well-established form of redressable injury." (cleaned up)).

[7] The District Court has the equitable authority to extend the expiry of funding appropriated for the ECJ Program beyond the statutory deadline if necessary. *City of Houston v. Dep't of Hous. and Urb. Dev.*, 24 F.3d 1421, 1426 (D.C. Cir. 1994) (describing an "equitable doctrine ... that permits a court to award funds based on an appropriation even after the date when the appropriation lapses, so long as 'the lawsuit was instituted on or before that date.'"); *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 98 (D.C. Cir. 2021). Defendants have nonetheless opposed application of this doctrine in other cases.

Defendants' concern that non-parties may benefit from the District Court's opinion falls flat. The District Court did not direct Defendants to obligate any particular dollar amount or direct it to any particular parties. Moreover, it is usual that the vacatur of an illegal government action will have broad effect. In *NIH*, for example, the vacatur of the illegal guidance benefited all future grant seekers, not just the plaintiffs in that case.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to stay the challenged Orders.

Dated: August 12, 2026

Respectfully submitted,

/s/ Kimberley Hunter
Kimberley Hunter
Irena Como
Nicholas S. Torrey
Carl T. Brzorad
Ben Grillot
Spencer Gall
SOUTHERN ENVIRONMENTAL LAW CENTER
136 East Rosemary Street, Suite 500
Chapel Hill, NC 27514
Telephone: (919) 967-1450
Facsimile: (919) 929-9421
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org

23

cbrzorad@selc.org
bgrillot@selc.org
sgall@selc.org

*Counsel for Appellees The Sustainability Institute, Bronx River Alliance, CleanAIRE NC, Earth Island Institute, and Leadership Counsel for Justice and Accountability*

Graham Provost
Elaine Poon
Cassandra Crawford
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
graham@publicrightsproject.org

*Counsel for Plaintiff-Appellees Baltimore, Maryland, Madison, Wisconsin, and New Haven, Connecticut*

24

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing response complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5193 words. The response complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word in proportionally spaced 14-pt Times New Roman typeface.

*/s/ Kimberley Hunter*
Kimberley Hunter

**CERTIFICATE OF SERVICE**

I certify that on August 12, 2026, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Kimberley Hunter*
Kimberley Hunter

26