**No. 26-2040**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

THE SUSTAINABILITY INSTITUTE, *et al.*,
Plaintiffs-Appellees,

v.

DONALD J. TRUMP, *et al.*,
Defendants-Appellants.

On Appeal from the United States District Court
for the District of South Carolina

**REPLY IN SUPPORT OF APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL BY AUGUST 21, 2026**

BRETT A. SHUMATE
*Assistant Attorney General*

BRYAN P. STIRLING
*United States Attorney*

DANIEL TENNY
SEAN R. JANDA
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3388*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ........ 1

ARGUMENT ........ 3

I. This Court Has Appellate Jurisdiction ........ 3

II. The District Court's Order Was Erroneous ........ 5

A. There Are No Available ECJ Funds to Re-Obligate ........ 5

B. The District Court's Vacatur Did Not Require EPA to Affirmatively Re-obligate Funds nor Would Such Relief Be Permissible ........ 8

III. The Equities Warrant a Stay ........ 11

CONCLUSION ........ 14

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY

The district court vacated EPA's guidance regarding termination of Environmental and Climate Justice grants. Plaintiffs then moved the court to "clarify" that, "as a result of the Court's vacatur," EPA must "obligate[]" available funds—which total more than $1 billion under plaintiffs' view of the relevant statutes—to "eligible grantees by September 30, 2026." App.38. The court granted that motion, stating that its previous order had required that "funds must be made available" and that EPA would be "defying this Court's prior order" if it did not re-obligate funds. App.13-14. Those orders came on the heels of this Court's previous stay and vacatur of the district court's original injunctions requiring EPA to restore plaintiffs' funding.

The district court's new order—which is effectively an injunction requiring EPA to obligate more than $1 billion in the next six weeks—was legally indefensible and practically untenable, as explained in the government's stay motion. Now, faced with the task of defending the order that they procured, plaintiffs flee from it at every turn. They seek to shield the order from appellate review by claiming that it "merely acknowledge[s]" an underlying statutory mandate without requiring EPA to comply. Opp.8.

And they similarly rewrite the order by claiming that it imposes no "new affirmative obligations." Opp.15 (quotation omitted).

Plaintiffs do not appear to deny that the government must obligate substantially all available ECJ funds—more than $1 billion—by September 30 or be deemed to have defied the court's order. And plaintiffs' effort to recast the effects of the order only reflects plaintiffs' inability to defend it on its own terms. Plaintiffs offer no persuasive reason to narrow Congress's blanket rescission of unobligated ECJ funds to reach only a small subset of program funds. They nowhere try to explain how the court's interpretation of its order comports with normal APA principles regarding the limited effect of a vacatur. They offer no arguments to justify interpreting the ECJ statute, even before the rescission, as an unequivocal requirement for EPA to obligate substantially all available funds. And they provide no basis in the relevant equitable factors for upholding the court's order requiring the resurrection of an entire grant program that originally contained more than 300 grants, all at the behest of eight grantees who originally received little more than 2% of available funds.

This Court has already once stayed—and then vacated—injunctions entered in this case requiring EPA to reinstate plaintiffs' grants. The district

court's latest order is worse than its first one, and it too should be stayed pending appeal.

## ARGUMENT

### I. This Court Has Appellate Jurisdiction

This Court has jurisdiction over appeals from orders "granting" an "injunction[]." 28 U.S.C. § 1292(a)(1). An injunction is a "judicial order that tells someone what to do or not to do." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549 (2022) (quotation omitted). And when a district court's order has "the same practical effect as a preliminary injunction," it is "appealable under § 1292(a)(1)" regardless of the label that the court uses. *Abbott v. Perez*, 585 U.S. 579, 595 (2018); *see also Sampson v. Murray*, 415 U.S. 61, 86-88 (1974).

As explained, the district court has made clear that its original order requires that "funds must be made available" by EPA "through September 30, 2026," and that EPA would be "defying" that order if it did not make funds available. App.13-14. In other words, the court has interpreted its own order—at plaintiffs' urging, *see* App.38—to require EPA to obligate more than $1 billion in funds in the next six weeks. Not only does that order have an obvious financial effect but it also imposes an enormous practical burden

on EPA by requiring it to immediately reimplement a grant program that previously involved billions of dollars in funds and hundreds of grantees. *See* Mot.23-24.

In short, the district court's order imposes precisely the sort of "serious, perhaps irreparable, consequences that [the government] can effectually challenge only by an immediate appeal." *Carson v. American Brands, Inc.*, 450 U.S. 79, 90 (1981) (quotation omitted). And having induced the court to enter an order requiring such immediate action on EPA's part, plaintiffs can hardly turn around now and seek to shield the order from this Court's review. Nor is it relevant for these purposes that the district court nominally refused plaintiffs' request for an injunction, *contra* Opp.8, because it is the practical effect, not the label, of the order that matters.

Plaintiffs make no more headway when they describe the district court's order as simply "acknowledg[ing]" or "restat[ing]" a statutory mandate to obligate funds. Opp.8-9. If all the court had done was opined on its view of the statute, the government would not be seeking a stay from this Court. But the district court has additionally made clear—again, at plaintiffs' urging—that it believes EPA would be "defying" its order if EPA acted in accordance with the government's view, rather than the court's view, of

EPA's statutory obligations. App.13-14. EPA thus understands the court's order to reflect a judicially imposed requirement that EPA obligate substantially all available ECJ funds by September 30.

Plaintiffs could be correct that this Court lacks appellate jurisdiction only if the government is under no judicially enforceable obligation to obligate additional funds. Plaintiffs conspicuously avoid taking that position, which cannot be reconciled with the text of the district court's orders.

## II. The District Court's Order Was Erroneous

### A. There Are No Available ECJ Funds to Re-Obligate

As explained, *see* Mot.10-13, while EPA was in the process of terminating ECJ grants, Congress rescinded all "unobligated balances of amounts made available to carry out" the ECJ program. Pub. L. No. 119-21, tit. VI, § 60016, 139 Stat. 72, 156 (2025). Consistent with Congress's default rule that statutes using present tense language include the future, that rescission operates on an ongoing basis to all ECJ funds that become unobligated "now and in the future." *Hicks v. Frame*, 145 F.4th 408, 419 (4th Cir. 2025). As a result, no unobligated ECJ funds remain available, and the district court cannot properly order EPA to re-obligate ECJ funds to grantees.

In response, plaintiffs provide no cogent explanation for why Congress would have intended its rescission to treat differently those ECJ grants that EPA terminated shortly before July 4, 2025, and those grants that EPA terminated shortly thereafter. Nor do plaintiffs address the fact that Congress chose not to limit its rescission—as it has in other statutes—to unobligated balances as of the date of enactment. *See* Mot.12. Instead, plaintiffs rely on scattered inferences from the statutory text and legislative history, none of which provide a persuasive reason to adopt plaintiffs' cramped view of the rescission.

As to the text, plaintiffs primarily (Opp.12-14) rely on the statute's use of past participles in providing that "unobligated balances" "are rescinded." In plaintiffs' view, those words "plac[e] a temporal limitation on the statute." Opp.13. But plaintiffs' own cited authority makes clear the limited import of those past participles: balances will only be rescinded once they become unobligated.

In *Florida Department of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33 (2008), the Supreme Court construed a provision of the Bankruptcy Code providing a tax exemption for asset transfers "under a plan confirmed under" Chapter 11. *Id.* at 38 (emphasis and quotation omitted). In concluding

that the exemption applied only to asset transfers that take place after a plan is confirmed, the Court noted that this "more natural" reading of the statute cohered with the use of the past participle "confirmed." *See id.* at 39-41. But the Court did not dispute that (of course) the statutory exemption applies on an ongoing basis, rather than being limited to plans that were already "confirmed" at the time of the statute's enactment. Here, similarly, the rescission applies only once a particular balance becomes "unobligated," but the statute has ongoing effect as additional balances become unobligated.

Nor is it relevant that Congress has "repealed other grant programs" "in their entirety." Opp.14-15. At the time Congress enacted the rescission, some ECJ grants had not yet been terminated. And it is unsurprising that for such grants, Congress would have wanted to retain the statutory requirements governing the program (which provide, for example, limits on how grant funds may be spent, *see* 42 U.S.C. § 7438(b)(2)). That intention says nothing about whether Congress intended to rescind the funds underlying those grants if they were to become unobligated.

Plaintiffs' appeal to legislative history fares no better. Plaintiffs rely on a single statement by an individual legislator—"among the least illuminating forms of legislative history." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 307

(2017). And the discussion plaintiffs cite illustrates why this history is so unilluminating: The immediately preceding legislator provided an account of the rescission matching EPA's understanding, explaining that if EPA were to be "successful in terminating" grants, "these grants will be subject to rescission." Supp.App.145.

Plaintiffs also devote substantial attention (Opp.10-12) to the argument that some ECJ funds have not yet become unobligated, mostly because the closeout process remains ongoing for some grants. Even under plaintiffs' understanding, those funds (which are currently spoken for) cannot be re-obligated now, so their only relevance is to underscore the implausibility of plaintiffs' position. According to plaintiffs, if the closeout process concludes for one or more grants near the September 30 expiration date for the funding, EPA must immediately turn around and obligate those funds to new grantees. There is no basis in the statute or common sense for imposing such a requirement.

### B. The District Court's Vacatur Did Not Require EPA to Affirmatively Re-obligate Funds nor Would Such Relief Be Permissible

Even apart from Congress's rescission, the district court was mistaken to interpret its vacatur order to require the government to obligate

substantially all ECJ funds before September 30. That recasting of the vacatur order as effectively a mandatory injunction misunderstands normal APA principles and cannot be reconciled with the underlying statute. Although plaintiffs themselves requested that relief, they now have surprisingly little to say in its defense.

At the outset, plaintiffs nowhere dispute the government's explanation of the limited effect of the district court's vacatur. Properly understood, that relief prevents EPA from relying on the vacated guidance, but it does not require EPA to take any new affirmative action. Nor does it properly compel EPA—much less on pain of contempt—to act in accordance with the court's apparent view of the EPA's statutory obligations. *See* Mot.13-16.

Rather than defend the district court's understanding of its own vacatur, plaintiffs pivot (Opp.15-16) to arguing that the ECJ statute itself requires EPA to award the available funding to eligible grantees. But that argument provides no basis for denying a stay.

Even if plaintiffs were right about the statute, that would at most entitle plaintiffs to bring a claim seeking a mandatory injunction to compel compliance. *See* Mot.14-15. It would in no way entitle the district court to treat its vacatur order as such an injunction, or to issue (or claim to have

issued) such an injunction without considering whether such an injunction is warranted under the high standard applicable to such claims. Nor would it justify the district court's broad relief—which extends far beyond any funds in which plaintiffs themselves have a specific interest—as an equitable matter.

In any event, plaintiffs are wrong about the statute. The government has already explained in detail that the ECJ statute does not contain any unequivocal command to obligate any—much less all or substantially all—available funds. *See* Mot.16-20. Plaintiffs' one-sentence ipse dixit that the statute "mandate[s] that EPA 'shall' use the funding to award grants," Opp.15, does not engage with any of those arguments. *Cf. United States ex rel. Rosales v. Amedisys N.C., LLC*, 128 F.4th 548, 561 (4th Cir. 2025) (pointing to a "claim in a conclusory fashion" is "insufficient to avoid forfeiture").

Finally, plaintiffs fight a strawman when they argue that the Impoundment Control Act does not "eliminate[] the mandatory requirement to disburse [ECJ] funds." Opp.17. The government's point is not that the ICA "eliminates" some requirement in the ECJ statute. Instead, as explained, the ECJ statute contains no such requirement. The government's

point is only that, to the extent that the ICA contains its own requirement to obligate funds, plaintiffs could not enforce that requirement through this APA suit—a point that plaintiffs do not appear to dispute. *See* Opp.17-18.

## III. The Equities Warrant a Stay

The equities plainly support staying the district court's order. As an initial matter, plaintiffs do not seriously contest that the order will work irreparable harm on the Executive Branch and the public fisc. Nor could they: as explained, the order requires EPA to obligate more than $1 billion in the next six weeks, all to fund a grant program that both Congress and the Executive Branch have decided to abandon.

Instead, plaintiffs primarily contend that any such harm is justified because (in their view) Congress required EPA to obligate the funds in question. Opp.18-20. As explained, plaintiffs are wrong about that on the merits. And Congress's rescission of unobligated funds hardly reflects a strong congressional desire for further spending in this area. But even if Congress thought that the statutes required EPA to obligate funds and wanted EPA to do so, Congress could engage directly with the Executive to press its institutional prerogatives. *See* Mot.20-21. Allowing a single district

court to bypass that inter-Branch process at the behest of eight grantees works a serious separation-of-powers harm.

That harm is in addition to the practical harms that compliance with the order will engender, and about which plaintiffs have no persuasive response. *See* Mot.22-24. And although plaintiffs claim that EPA has "put themselves in this position," Opp.20, that claim is baseless: until the district court's recent order, EPA had no reason to make new grants under the ECJ program using funds that it believed to have been rescinded.

Conversely, plaintiffs fail to substantiate any serious interest in the district court's order. Plaintiffs do not dispute that they have no statutory entitlement to ECJ funds, and plaintiffs' assertion that they "have excellent projects" that could be funded under the ECJ program, Opp.21, is irrelevant to the question whether they have a serious equitable interest in receiving federal funding.

Moreover, although plaintiffs claim that the possibility that they may seek damages later "has no place in the equities," Opp.22, this Court has held the opposite: If "there is even a possibility that adequate compensatory or other corrective relief will be available at a later date, a court should hesitate before concluding a plaintiff's harm is irreparable for purposes of granting a

preliminary injunction." *AFSCME v. SSA*, 172 F.4th 361, 372 (4th Cir. 2026) (en banc) (quotation omitted).

Finally, plaintiffs fail to justify the breadth of the district court's order, which applies to all available ECJ funding rather than the 2% of the funds originally obligated to plaintiffs' grants. *See* Mot.24-26. Plaintiffs' only response is to note that, in some cases, a vacatur "will have broad effect." Opp.23. That may be true, but it provides no equitable basis for permitting the court's order—which is, as explained, effectively a mandatory injunction, not a proper vacatur—to remain in effect across the entirety of ECJ funds. At an absolute minimum, the order should be stayed as applied to all funds that were not originally obligated to plaintiffs' grants.

## CONCLUSION

For the foregoing reasons and those in the government's motion, the Court should stay pending appeal the district court's injunction by August 21, 2026.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

BRYAN P. STIRLING
*United States Attorney*

DANIEL TENNY

*/s/ Sean R. Janda*
SEAN R. JANDA
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3388*
*sean.r.janda@usdoj.gov*

August 2026

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2593 words. This reply also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

*/s/ Sean R. Janda*
SEAN R. JANDA