No. 26-2040

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

THE SUSTAINABILITY INSTITUTE, *et al*.,
*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States,
*et al.*,
*Defendants-Appellants.*

# APPELLEES' PETITION FOR REHEARING EN BANC OF ORDER GRANTING STAY AND INITIAL HEARING EN BANC OF THE APPEAL


Kimberley Hunter
Irena Como
Nicholas S. Torrey
Carl T. Brzorad
Spencer Gall
Benjamin Grillot
SOUTHERN ENVIRONMENTAL LAW CENTER
*136 East Rosemary Street, Suite 500*
*Chapel Hill, NC 27514*
(919) 967-1450
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org
cbrzorad@selc.org
sgall@selc.org
bgrillot@selc.org

Graham Provost
Elaine Poon
Cassandra Crawford
PUBLIC RIGHTS PROJECT
*490 43rd Street, Unit #115*
*Oakland, CA 94609*
(510) 738-6788
graham@publicrightsproject.org
elaine@publicrightsproject.org
cassandra@publicrightsproject.org

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION AND RULE 40 STATEMENT ........ 1

BACKGROUND ........ 4

A. The ECJ Program ........ 6

B. The OBBBA ........ 7

REASONS FOR GRANTING EN BANC REVIEW ........ 8

I. The Stay Conflicts With the Supreme Court's Decision in *NIH* ........ 9

II. The Stay Allows a Repeal by Implication and Conflicts With the *En Banc* D.C. Circuit's Analysis of OBBBA. ........ 12

III. The Stay May Allow for Inconsistent Outcomes From This Court ........ 14

IV. There Is No Appealable Injunction Here. ........ 15

CONCLUSION ........ 17

CERTIFICATE OF COMPLIANCE ........ 19

CERTIFICATE OF SERVICE ........ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*,
585 U.S. 579 (2018) ....................16

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ....................9

*Carson v. American Brands, Inc.*,
450 U.S. 79 (1981) ....................16

*Climate United Fund v. Citibank, N.A.*,
No. 25-5122, 2026 WL 2235002 (D.C. Cir. Aug 4, 2026)....................3, 11, 13

*Community Legal Services in East Palo Alto v. United States Department of Health and Human Services*, 155 F.4th 1099 (9th Cir. 2025)....................11

*Corner Post, Inc. v. Board of Governors of Federal Reserve System*,
603 U.S. 799 (2024) ....................16

*Golden Corral Corporation v. Illinois Union Insurance Company*,
182 F.4th 326 (4th Cir. 2026) ....................14

*Green & Healthy Homes Initiative, Inc. v. Environmental Protection Agency*, 788 F. Supp. 3d 676 (D. Md. 2025) ....................4, 14

*In re Terrorist Attacks on Sept. 11, 2001,*
741 F.3d 353 (2d Cir. 2013)....................14

*Maine Community Health Options v. United States*,
590 U.S. 296 (2020) ....................12

*Mayor and City Council of Baltimore v. Azar*,
799 F. App'x 193 (4th Cir. 2020) ....................2

*Morton v. Mancari*,
417 U.S. 535 (1974) ....................12

*National Institutes of Health v. American Public Health Association*,
145 S. Ct. 2658 (2025) ........ *passim*

*New York v. Trump*,
171 F.4th 1 (1st Cir. 2026) ........ 11

*Sampson v. Murray*,
415 U.S. 61 (1974) ........ 16

*Sustainability Institute v. Trump*,
165 F.4th 817 (4th Cir. 2026) ........ 4, 5, 7

*Sustainability Institute v. Trump*,
784 F. Supp. 3d 861 (D.S.C. 2025) ........ 4

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ........ 16

*Woonasquatucket River Watershed Council, et al. v. United States Department of Agriculture*, et al., 25-1428, 2026 WL 2279789 (1st Cir. Aug. 7, 2026) ........ 10

**Statutes**

28 U.S.C. § 1291 ........ 16

28 U.S.C. § 1292(a)(1) ........ 15

28 U.S.C. § 1491(a)(1) ........ 10

42 U.S.C. § 7438 ........ 6, 7, 9, 16

Inflation Reduction Act, Pub. L. No. 117-169, 136 Stat. 1818 (2022) ........ 6

One Big Beautiful Bill Act ("OBBBA"), Pub. L. No. 119-21, 139 Stat. 72 (2025) ........ 3

**Other Authorities**

Exec. Order No. 14,151, 90 Fed. Reg. 8,339 (Jan. 29, 2025) ........ 6

Exec. Order No. 14,154, 90 Fed. Reg. 8,353 (Jan. 29, 2025) ........ 6

## INTRODUCTION AND RULE 40 STATEMENT

Congress created a block grant program commanding that the Environmental Protection Agency ("EPA") "shall" award more than $3 billion in appropriated funds to assist communities in need across the country. Despite this directive, Defendants terminated the entire program. Defendants have never meaningfully claimed their program termination was lawful, relying instead on jurisdictional defenses. And now, with a statutory clock ticking rapidly towards the September 30, 2026 deadline for EPA to obligate any remaining appropriated funds, a divided panel of this Court has issued a stay without explanation, paving the way for Defendants to run out the clock.

While *en banc* review of a stay pending appeal is exceptional relief, under these extraordinary circumstances, review by the full Court is needed to restore order to the justice system as well as consistency with other courts.

Review now is warranted because this matter presents questions of "exceptional importance." Local Rule 40(b)(iv). As explained below, these include jurisdictional questions about the power of Article III courts to review the termination of entire grant programs as well as the proper reading of federal appropriations statutes. Similar questions with respect to federal funding have been the subject of hundreds of federal cases over the past year and a half, including

many in this circuit. Resolution of these issues is one of the most critical legal issues of this era and district courts need guidance.

If the stay remains in place, it risks eliminating the opportunity for this Court to review these questions and address "the legality of nationwide executive . . . action." *Mayor & City Council of Baltimore v. Azar*, 799 F. App'x 193, 195 (4th Cir. 2020) (Thacker, J., concurring in grant of initial hearing en banc). That is because if the full court does not step in at this juncture, Defendants may prevail simply by dragging their feet until the September 30 statutory deadline, and then argue mootness to try to evade review. Given that context, this stay decision may represent the whole ballgame, which is why *en banc* review is so important now. Such a turn of events would not only allow Defendants to functionally achieve a repeal of a program Congress created, funded, and intended to keep active, but would also reward their jurisdictional gamesmanship.

The stay also warrants review by the full Court because it conflicts with recent rulings by the Supreme Court and the D.C. Circuit. Local Rule 40(b)(iii). In her controlling concurrence in *National Institutes of Health v. American Public Health Ass'n*, 145 S. Ct. 2658 (2025), Justice Barrett was clear that district courts may vacate high-level policy decisions related to entire grant programs, even if such vacatur impacts subsequent funding decisions. *See id.* at 2661 (Barrett, J., concurring). After a remand from this Court, Plaintiffs revised their complaint in

light of Justice Barrett's framework and the direction of this Court, seeking review and vacatur of Defendants' decision to terminate an entire grant program—not any individual grants. The District Court then vacated that high-level termination decision (on June 11) and explained in a clarifying order (on July 22) that this vacatur left Defendants with a statutory mandate to implement the grant program. The stay of the District Court's July 22 Order conflicts with the Supreme Court's parsing of the type of relief district courts, as opposed to the Court of Federal Claims, may order.

The stay also warrants review by the full Court to the extent it depends on a misreading of the budget reconciliation bill known as the One Big Beautiful Bill Act ("OBBBA"), Pub. L. No. 119-21, 139 Stat. 72 (July 4, 2025). Although the stay order provides no reasoning, it may conflict with a recent ruling from the *en banc* D.C. Circuit. Defendants argued below that the OBBBA—which rescinded only "unobligated balances" from the Environmental and Climate Justice block grant program ("ECJ program")—should instead be read to rescind all funding that might become unobligated in the future, effectively repealing the program. Not only would this amount to a repeal by implication, which is disfavored, but it stands in firm contrast with the D.C. Circuit's interpretation of the Act in *Climate United Fund v. Citibank, N.A.*, No. 25-5122, 2026 WL 2235002, at *1 (D.C. Cir.

Aug 4, 2026) (en banc), where that court determined that Congress did not intend to rescind grant funding that had already been obligated.

The stay also risks inconsistent rulings and results from this Court. Another case—*Green & Healthy Homes Initiative, Inc. v. Env't Prot. Agency*, 788 F. Supp. 3d 676 (D. Md. 2025)—involves the same grant program at issue in this case and raises many similar questions for review. That case is fully briefed but is not on the September argument calendar. It is essential that the central issues in both cases be resolved without interference from the September 30, 2026 deadline.

## BACKGROUND

Plaintiffs challenged EPA's termination of the ECJ program as soon as it became apparent. *See generally* Compl., *Sustainability Institute v. Trump*, 784 F. Supp. 3d 861 (D.S.C. 2025) (No. 2:25-cv-2152) After discovery and Defendants' own admissions made clear that EPA's decision was unlawful, the District Court granted relief, but in the interests of judicial modesty, tailored that relief to the Plaintiffs' specific grants only. Defendants appealed and a panel of this Court, citing *National Institutes of Health*, 145 S. Ct 2658, 2664 (2025), (which was issued after the District Court's order), vacated the injunctions to reinstate Plaintiffs' individual grants under the ECJ Program. *Sustainability Inst. v. Trump*, 165 F.4th 817, 826–28 (4th Cir. 2026). Consistent with *National Institutes of Health*, the panel left open the

opportunity for the District Court to address claims challenging the termination of entire grant programs. *Id.* at 829 n.8 & 833–34.

On remand, Plaintiffs filed a supplemental complaint focused on the termination of the ECJ Program. *See* Supp. Compl., *Sustainability Institute v. Trump*, No. 2:25-2152-RMG (D.S.C. 2026), D. Ct. Dkt. No. 203. Plaintiffs moved for partial summary judgment and sought an order that would require Defendants to implement the ECJ Program on the terms mandated by Congress. *See* Motion for Partial Summ. J. at 11, *Sustainability Institute v.* Trump, No. 2:25-2152-RMG (D.S.C. 2026), D. Ct. Dkt. No. 204. Plaintiffs were explicit that they did not seek the restoration of individual grants. *Id*. The District Court granted, in part, Plaintiffs' motion and rejected Defendants' argument that the OBBBA mooted the case by rescinding all funding for the ECJ Program, recognizing that such an expansive reading of the rescission would be an impermissible repeal by implication. App. 3, n.1.[1]

The District Court vacated Defendant EPA's termination guidance because it violated the statutory mandate. App. 10–11. However, the District Court explicitly declined to enter an injunction. App. 11. After EPA informed Plaintiffs it did "not believe that any specific agency action [was] required to comply with the Court's vacatur," and that EPA would continue to effectuate its termination of the ECJ

[1] The appendix is attached to Defendants' motion for stay, Doc. 9.

Program notwithstanding the vacatur, Plaintiffs moved to enforce the judgment and clarify relief. App. 34–41. In response, the District Court "clarifie[d] that the EPA must comply with its statutory obligations to administer the ECJ Program through September 30, 2026." App. 14 ("July 22 Order"). Defendants docketed their appeal and filed a motion for stay. A divided panel granted the motion. The stay order contains no reasoning.

### A. The ECJ Program

The grant program at issue here was enacted by the Inflation Reduction Act, Pub. L. No. 117-169, 136 Stat. 1818 (Aug. 16, 2022). In that Act, Congress appropriated $3 billion to EPA, "to remain available until September 30, 2026," 42 U.S.C. § 7438(a)(1), (2), and mandated that EPA "shall use" this funding "to award grants" to "eligible entities," to carry out certain environmental, public health, and resiliency projects benefitting disadvantaged communities. *Id.* § 7438(b). EPA received thousands of grant applications and, following a competitive process, awarded ECJ grants to a few hundred of the most qualified applicants.

In January 2025, President Trump issued a pair of executive orders targeting federal programs funded by the Inflation Reduction Act or involving environmental justice. Exec. Order No. 14,154, 90 Fed. Reg. 8,353 (Jan. 29, 2025); Exec. Order No. 14,151, 90 Fed. Reg. 8,339 (Jan. 29, 2025). In February 2025, the Assistant Deputy Administrator of the EPA "decided that certain grant

programs"—including the entirety of the ECJ Program—"should be terminated for policy reasons." App. 18; 21–25. EPA then took actions to implement that guidance and eliminate the program.[2]

### B. The OBBBA

On July 4, 2025, Congress enacted the OBBBA, which repealed certain provisions of the Inflation Reduction Act and rescinded portions of certain funding appropriated under that law.

For the ECJ Program, unlike other grant programs, Congress did not repeal the statutory mandate and rescinded only a limited subset of the $3 billion originally appropriated. The relevant provision of the OBBBA states in full:

> The *unobligated balances* of amounts made available to carry out section 138 of the Clean Air Act (42 U.S.C. 7438) are rescinded.

§ 60016, 139 Stat. at 156 (emphasis added). The Chair of the House subcommittee with jurisdiction over the ECJ Program explained that rescission of "unobligated balances" would affect only funds that were "unobligated at the time of passage." Supp. App. 146.[3] He explained the OBBBA would not rescind funds tied to grants

---

[2] A comprehensive overview of EPA's termination of the ECJ Program appears in Plaintiffs' motion for partial summary judgment. *See* Motion for Partial Summ. J. at 5–8, *Sustainability Institute v.* Trump, No. 2:25-2152-RMG (D.S.C. 2026), D. Ct. Dkt. No. 204.

[3] Plaintiffs' supplemental appendix is attached to Plaintiffs opposition to Defendants' motion for a stay filed at Doc. 24-2.

that had been awarded because Congress "can't rescind expenditures that have already been obligated." Supp. App. 145–46. If those funds later became unobligated, they could potentially be subject to a "future rescission," but "for purposes of this reconciliation, [Congress] can't look at the crystal ball and decide what might happen in the future." *Id.*

EPA recently disclosed that approximately $479 million in ECJ Program funding "was recorded as unobligated in EPA's financial systems," when the OBBBA became law. App. 43. That is roughly consistent with the non-partisan Congressional Budget Office, which calculated that the OBBBA rescinded $516 million from the ECJ program. Supp. App. 148.

According to EPA, the agency currently has over $445 million in ECJ Program funding on hand. *See* App. 44. In addition, at present, approximately 73 grants "are still financially 'open' in EPA's financial system . . . ." App. 49. Another $1.1 billion in ECJ Program funding is apparently available to EPA upon request to Defendant Office of Management and Budget. App. 44.

## REASONS FOR GRANTING EN BANC REVIEW

This case involves issues of exceptional importance, and the panel's stay sets this Court at odds with the Supreme Court, creates a split with other circuits, and sets the stage for inconsistent rulings from this Court. *See* Local Rule 40(b)(iii), (iv). Moreover, the stay will allow Defendants to attempt to run out the clock on

their statutory obligations by arguing later opportunities for this Court to correct its errors are moot, thereby causing irreversible harm to Plaintiffs and the public interest.

## I. The Stay Conflicts With the Supreme Court's Decision in *NIH*

The stay implicitly validates Defendants' argument that vacatur of "EPA's higher-level policy guidance" does not require their compliance with the statutory mandate to implement the ECJ program. Doc. 9 at 16. That position is incompatible with Justice Barrett's controlling concurrence in *National Institutes of Health*, which expressly recognized that a district court's order may validly affect funding when the effect on funding "simply flow[s]" from vacatur of a high-level agency decision, as was the case in *Bowen v. Massachusetts*. *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring) (citing *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)).

Here, Defendants concede that the District Court's vacatur "may be consistent with *NIH*." Doc. 9 at 16. It is, because the District Court did nothing beyond vacating Defendants' high-level termination guidance. This vacatur removed the ostensible roadblock Defendants tried to erect between themselves and the statutory mandate, which states "the Administrator [of EPA] *shall* use amounts made available . . . to award grants . . . to eligible entities to carry out [specified activities] that benefit disadvantaged communities." 42 U.S.C. §

7438(b)(1) (emphasis added). Because that statutory mandate (though time-limited) currently remains in place, Defendants are required to comply by awarding available grant funds.

The district court's vacatur is consistent with *National Institutes of Health* (and this Court's prior decision in this case) because the order does not require reinstating any terminated grants. Instead, it simply removes the guidance that Defendants placed in the way of their statutory obligation to award ECJ program grants with the available funds. This is perfectly consistent with *National Institutes of Health*, where Justice Barrett explained, "[t]hat the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded . . . upon' contract that only the [Court of Federal Claims] can hear." 145 S. Ct. at 2661 (quoting 28 U.S.C. § 1491(a)(1)). Instead, vacatur of an agency policy "[g]oing forward" is a valid exercise of a district court's APA jurisdiction. *Id.* That is what the District Court did here: it prohibited Defendants from relying on their termination guidance going forward, leaving no possible basis for them to defy the statutory mandate to award ECJ program grants.

The District Court's order is also consistent with recent decisions of other Courts of Appeals. *E.g.*, *Woonasquatucket River Watershed Council, et al. v. U.S. Dep't of Agric.*, et al., No. 25-1428, 2026 WL 2279789, at *18 (1st Cir. Aug. 7, 2026) (explaining that vacatur that may result in disbursement of funds does not

exceed district court's authority (citing *New York v. Trump*, 171 F.4th 1, 30 (1st Cir. 2026)); *Climate United Fund v. Citibank, N.A.*, No. 25-5122, 2026 WL 2235002 (D.C. Cir. Aug. 4, 2026) (en banc) (affirming injunction and thus implicitly affirming jurisdiction). As the Ninth Circuit explained in another case, a district court order "requiring compliance with the statutory obligations set out by Congress" is consistent with *National Institutes of Health*: "like the challenge to the guidance documents in *NIH*, Plaintiffs challenge the Government's broader policy of non-compliance with the [statutory funding mandate] . . . through the complete termination of funding combined with no specified alternative means of compliance." *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 155 F.4th 1099, 1100, 1106 (9th Cir. 2025) (emphasis omitted).

In sum, Defendants' quarrel is with Congress's choice to mandate the disbursement of these grant funds. And their stay motion was, at bottom, an attempt to rewrite *National Institutes of Health* into a prohibition against any monetary relief resulting from an APA challenge to agency guidance, when *National Institutes of Health* expressly recognized that such relief (which again, is simply the Congressional mandate to implement the grant program as Defendants see fit, within the statutory limits) may indeed validly "flow[]" from a vacatur like the one the District Court issued here. 145 S. Ct. at 2661.

## II. The Stay Allows a Repeal by Implication and Conflicts With the *En Banc* D.C. Circuit's Analysis of OBBBA.

To the extent the stay was based on Defendants' argument that the OBBBA rescinded all funding for the ECJ program, this also warrants *en banc* review for two main reasons: it would affirm a repeal by implication on a matter of exceptional importance, and it would place this court in conflict with a recent ruling of the D.C. Circuit. *See* Local Rule 40(b)(iii), (iv).

"[R]epeals by implication are not favored." *Morton v. Mancari*, 417 U.S. 535, 549 (1974), especially "in the appropriations context." *Maine Cmty. Health Options v. U.S.*, 590 U.S. 296, 315 (2020) (cleaned up). Here, far from taking steps to repeal this program, Congress chose to repeal *other* programs but left the statutory text of Section 138 intact. *Compare* OBBBA § 60002, 139 Stat. at 154 (repealing the statutory mandate to implement the Greenhouse Gas Reduction fund) *with* § 60014, 139 Stat. at 156 (rescinding unobligated funding without repeal of statutory section). (repealing the statutory mandate to implement the Greenhouse Gas Reduction fund ("GGRF")). Without *en banc* review prior to September 30, 2026, Defendants would have functionally achieved a repeal by implication—zeroing out the program—despite Congress directing otherwise. Given the size and importance of the ECJ program, this is a matter of "exceptional importance" that warrants prompt review by the full court.

Second, a conclusion that the OBBBA repealed all funding for the ECJ program would place this Court at odds with the *en banc* D.C. Circuit. In its recent review of EPA's attempts to terminate the Greenhouse Gas Reduction Fund, the *en banc* Court upheld a preliminary injunction, thereby finding that the OBBBA did not rescind all funding for that program. *Climate United Fund*, 2026 WL 2235002, at *1 (concluding that the OBBBA "likely does not affect the applicability of Section 60103 to grant funds that were obligated and disbursed to Plaintiffs at the time of the OBBBA's enactment."). In addition, Chief Judge Srinivasan noted that "if not for the OBBBA's repeal of Section 60103 [the Greenhouse Gas Reduction Fund] of the IRA" (a factor not present here), he would have ruled with the majority. *Id.*

If the OBBBA did not absolve EPA of its obligations in *Climate United Fund* at the time it was passed, its obligations under the ECJ program also remain following the OBBBA. For both programs, the OBBBA stated that the unobligated balances are rescinded. OBBBA §§ 60002, 60016, 139 Stat. at 154, 156 (The GGRF rescission includes the phrase "as in effect on the day before the date of enactment of this Act," because the program was repealed as of the date of enactment). Unlike the GGRF, which was repealed, Congress left the ECJ program in place, making it all the more clear Congress intended the program and its

obligated funds to remain in place. The stay thus places this Court in conflict with the D.C. Circuit regarding the meaning of the OBBBA.

## III. The Stay May Allow for Inconsistent Outcomes From This Court

Because a stay will allow Defendants to use the expiration of funding as a shield to argue against relief regardless of the outcome of appellate review, it presents a high likelihood that this Court will issue orders that lead to inconsistent outcomes. As this court recently observed, this "poses a unique problem of unfairness." *Golden Corral Corp. v. Illinois Union Ins. Co.*, 182 F.4th 326, 331 (4th Cir. 2026) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 359 (2d Cir. 2013).

*Green and Healthy Homes Initiative*, which is fully briefed but not yet scheduled for argument, involves the same grant program at issue in this case, as well as similar legal claims. In *GHHI*, the lower court held that, among other APA violations, EPA acted in excess of its statutory authority by seeking "the removal of a grant program in its entirety that was congressionally mandated under the Clean Air Act." *Green & Healthy Homes Initiative, Inc. v. EPA*, 788 F. Supp. 3d 676, 700–01 (D. Md. 2025). Because Defendants did not seek a stay of that decision, the grant program remains active, and *GHHI* plaintiffs are thus unaffected by the September 30 deadline. This could lead to an outcome where

both sets of plaintiffs ultimately prevail on the legal aspects of their claims, but only the *GHHI* plaintiffs are able to obtain any relief.

Lifting the stay will allow for a more just opportunity for both appeals to be carefully resolved on the merits, leading to a more efficient and consistent result. The panel in this case will be able to benefit from the direction of the panel in *GHHI*, whereas currently the *GHHI* panel can take no direction from an unreasoned stay order.

Without a stay, Defendants would not be harmed even if they ultimately prevailed on appeal. While Defendants must obligate funding by September 30, 2026, that obligation simply sets up a framework for future payments, and does not require Defendants to pay out the entire value of any grants up front. Thus, in the event Defendants were successful on appeal, they would have incurred little expense during the intervening period.

## IV. There Is No Appealable Injunction Here.

Finally, the District Court's July 22 Order is not equivalent to an immediately appealable injunction. Defendants' reply brief (Doc. 27 at 3–5) invoked 28 U.S.C. § 1292(a)(1), which provides for interlocutory review of orders "granting . . . injunctions." But the District Court refused an injunction, explaining that the statutory mandate was sufficient. App. 11. The July 22 Order merely clarifies the effect of vacatur on EPA's "statutory obligations" and does not provide

injunctive relief. App. 14. Defendants cited no case treating a vacatur as an injunction, and the cases they did cite are inapposite. This is not a matter of an overlong TRO being treated as a preliminary injunction, as in *Sampson v. Murray*, 415 U.S. 61, 86–88 (1974), denial of a consent decree containing injunctive relief being treated as denial of an injunction, as in *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83 (1981), or an order requiring a party to take "prompt remedial action" having the same practical effect as an injunction, as in *Abbott v. Perez*, 585 U.S. 579, 593 (2018). That is because here, Congress—not the District Court—commanded Defendants to act, using mandatory "shall" language to require them to use the funding available to award grants by September 30, 2026. 42 U.S.C. § 7438(a)(1), (b)(1). The District Court merely acknowledged that statutory mandate and vacated a directive countermanding it. App. 10–11, 13–14. That cannot be treated as an injunction. *See, e.g.*, *Trump v. CASA, Inc.*, 606 U.S. 831, 847 n.10 (2025); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826 (2024) (Kavanaugh, J., concurring). Courts often restate statutory commands, and Defendants' argument would eviscerate the policy against piecemeal litigation embodied in 28 U.S.C. § 1291.

## CONCLUSION

For the foregoing reasons, the Court should grant rehearing en banc of the panel order.

Respectfully submitted,

Kimberley Hunter
Irena Como
Nicholas S. Torrey
Carl T. Brzorad
Spencer Gall
Benjamin Grillot
SOUTHERN ENVIRONMENTAL LAW CENTER
136 East Rosemary Street, Suite 500
Chapel Hill, NC 27514
Telephone: (919) 967-1450
Facsimile: (919) 929-9421
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org
cbrzorad@selc.org
sgall@selc.org
bgrillot@selc.org

*Counsel for Plaintiff-Appellees The Sustainability Institute, Bronx River Alliance, CleanAIRE NC, Earth Island Institute, Leadership Counsel for Justice and Accountability*

Graham Provost†
Elaine Poon††
Cassandra Crawford‡
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
graham@publicrightsproject.org
elaine@publicrightsproject.org

cassandra@publicrightsproject.org

*Counsel for Plaintiff-Appellees Baltimore, Maryland; Madison, Wisconsin; and New Haven, Connecticut*

† Admitted in D.C. Not admitted in California.
†† Admitted in Virginia. Not admitted in California.
‡ Admitted in North Carolina. Not admitted in California.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing petition complies with the word limit of Federal Rule of Appellate Procedure 40(d)(3)(A) because the petition contains 3743 words. The petition complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 4(d)(2) and 32(a)(5) and (6) because it has been prepared using Microsoft Word for Microsoft 365 in proportionally spaced 14-point Times New Roman typeface.

*/s/ Kimberley Hunter*
Kimberley Hunter

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Kimberley Hunter*
Kimberley Hunter