**No. 26-2040**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

The Sustainability Institute, *et al.*,

*Plaintiffs-Appellees*,

v.

Donald J. Trump, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of South Carolina

# RESPONSE TO CORRECTED PETITION FOR REHEARING EN BANC OF ORDER GRANTING STAY

BRETT A. SHUMATE
*Assistant Attorney General*

BRYAN P. STIRLING
*United States Attorney*

DANIEL TENNY
SEAN R. JANDA
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, D.C. 20530*
*(202) 514-3388*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ........ 1

STATEMENT ........ 3

ARGUMENT ........ 7

A. The Panel Properly Stayed the District Court's Effective Injunction ........ 7

B. En Banc Review of the Stay Panel's Decision Is Unwarranted ........ 14

CONCLUSION ........ 20

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY

This case previously challenged the termination of various grants, including (for eight plaintiffs) approximately $63 million in grants under the Environmental and Climate Justice (ECJ) program. The district court ordered the government to restore grant funding. This Court vacated those orders, explaining that the district court lacks jurisdiction to enter relief "designed to enforce obligations to pay money pursuant to Plaintiffs' grants." *Sustainability Inst. v. Trump*, 165 F.4th 817, 825 (4th Cir. 2026). And Congress has rescinded the funding underlying the ECJ program.

In the orders at issue now, the district court first vacated EPA's "guidance closing the" ECJ program. Then, the court interpreted that vacatur as requiring the government to re-obligate, by September 30, all available ECJ funds (based on the court's cramped reading of Congress's rescission): more than $1 billion.

A panel of this Court correctly stayed that order pending appeal. As the government explained to the stay panel, that effective injunction was erroneous for three reasons. First, Congress has rescinded the relevant funding, so notwithstanding the administrative delay in executing rescissions, there are no legally available appropriations for EPA to re-award

grants. Second, the court misunderstood the effect of its "vacatur." That vacatur wipes away the challenged guidance, but it does not compel any future action. Third, the court incorrectly understood the underlying statute to require EPA to obligate all ECJ funds.

In urging en banc review of the stay, plaintiffs have surprisingly little to say about any of these merits defects. Indeed, they nowhere address the governing APA principles or the appropriate construction of the underlying statute. And they barely engage with Congress's rescission. The failure of plaintiffs to establish any error in the panel's decision should alone doom their petition for extraordinary relief.

To justify the district court's orders, plaintiffs are reduced to interpreting them almost out of existence, contending that they do not "command[] Defendants to act" at all. Pet.16. But that puts plaintiffs in an untenable position. Even if they were correct about the limited effect of those orders, that would only highlight that en banc intervention is inappropriate. Conversely, if the orders do operate as effective mandatory injunctions (as the government understands), plaintiffs are left without any substantial defense on the merits. Either way, the full Court's review is unwarranted.

## STATEMENT

1. In 2022, Congress appropriated funds for a new grant program called ECJ grants. *See* 42 U.S.C. § 7438. Congress provided that the EPA Administrator "shall use" the appropriated funds "to award grants" to eligible entities "to carry out" specified activities "that benefit disadvantaged communities, as defined by the Administrator." *Id.* § 7438(a)-(b). The funds were originally "to remain available until September 30, 2026." *Id.* § 7438(a).

President Trump issued several Executive Orders setting forth his Administration's priorities and instructing agencies to terminate certain funding that did not align with those priorities where legally permissible. Pursuant to the President's Executive Orders, in February 2025, the agency determined that the ECJ grants "should be terminated for policy reasons." App.18. Starting in March, EPA "began terminating the grants," although terminations were hampered by "court orders in various cases." App.19.

At the same time, the Executive Branch worked with Congress to rescind the funding underlying the ECJ program. On July 4, 2025, Congress provided that all "unobligated balances of amounts made available to carry out" the ECJ program "are rescinded." Pub. L. No. 119-21, tit. VI, § 60016, 139 Stat. 72, 156 (2025). After Congress enacted that rescission, EPA

continued to process terminations of ECJ grants, and most grants were terminated shortly thereafter.

2. Plaintiffs "were awarded or were subrecipients on 38 federal grants across various funding programs." *Sustainability Inst. v. Trump*, 165 F.4th 817, 821 (4th Cir. 2026). Plaintiffs claimed that the freezing or termination of their grants violated the APA as well as constitutional provisions. *See id.* at 822-23. In April 2025, the district court ordered the government "to restore Plaintiffs' access to grant funds immediately." *Id.* at 823-24 (alteration and quotation omitted). The government appealed, and this Court stayed and ultimately vacated that relief. *See id.* at 821.

On remand, plaintiffs pivoted to challenging (as relevant here) EPA's decision to terminate all ECJ-funded grants. Eight plaintiffs had previously received one or more grants funded through the ECJ program, totaling approximately $63 million—a little more than 2% of total ECJ funding. *See* App.30-33. Those grants were each terminated between July 24, 2025, and August 1, 2025. *See id.*

In plaintiffs' view, EPA's decision to terminate all ECJ grants was contrary to the statute establishing the program and directing that the Administrator "shall use" appropriated funds to make grants under the

program. *See* 42 U.S.C. § 7438(b)(1). In June 2026, the district court granted partial summary judgment to plaintiffs. As relevant here, the court first concluded that plaintiffs' claim was not moot, notwithstanding Congress's rescission of ECJ funding. And the court concluded that EPA's decision was arbitrary and capricious and contrary to law. *See* App.8-11. The court thus vacated EPA's "guidance closing the" program. App.11. The court declined, however, to "enter a permanent injunction requiring EPA to implement the" program, stating that "the requested relief appears impractical." *Id.* (alteration and quotation omitted).

After the vacatur, the government informed plaintiffs that, although EPA would no longer rely on the vacated guidance, it did not intend to make new ECJ grants before September 30. Plaintiffs then moved to "enforce" the judgment and "clarify" the relief provided. In that motion, plaintiffs requested that the district court state that EPA must comply with the statute's supposed mandate "for funds to be obligated to eligible grantees by September 30, 2026." App.38. In the alternative, plaintiffs requested that the court enter an injunction "compelling EPA to implement the [program] by obligating the funding to eligible grantees by September 30, 2026." App.40.

On July 22, the district court granted plaintiffs' motion in part. The court stated that its previous order "held that [program] funds must be made available through September 30, 2026," and that EPA's intended course of action reflected the agency's "defying this Court's prior order." App.13-14. The court "clarifie[d] that the EPA must comply with its statutory obligations to administer the [program] through September 30." App.14.

Given that combination of orders, the government understood the district court to have construed its vacatur to require EPA to re-obligate to eligible grantees substantially all funds that were obligated as of July 4, 2025. That encompasses more than $1 billion that was originally awarded to potentially hundreds of grantees. App.49-50; *see also* App.43-44.

3. The government appealed and sought a stay of the district court's effective injunction. This Court granted a stay of the second order—that is, the order construing the vacatur to operate as a mandatory injunction. *See* Order (Aug. 20, 2026). The Court did not stay the underlying vacatur, which remains in effect. *See id.* Judge Heytens dissented. *Id.*

## ARGUMENT

### A. The Panel Properly Stayed the District Court's Effective Injunction

The district court re-cast its vacatur into an affirmative injunction requiring EPA to obligate more than $1 billion in funds. As the government explained to the stay panel, that effective injunction was erroneous for three independent reasons: First, Congress has rescinded all unobligated ECJ funds; thus, notwithstanding the administrative delay in executing rescissions, there are no legally available program funds for EPA to re-obligate. Second, under normal APA principles, the court's vacatur prevents EPA from implementing the vacated guidance but cannot require EPA to take new affirmative actions. And third, even setting aside the rescission, nothing in the underlying statutes creates a mandate enforceable by plaintiffs to obligate any remaining ECJ funds.

In their petition, plaintiffs barely address these problems with the district court's effective injunction. They spend only a paragraph discussing how to construe the rescission; they nowhere discuss the APA principles that constrain the effect of the court's vacatur; and they do not justify their reading of the underlying statute. Each of those problems independently supports the stay, and no issue presented warrants the full Court's review.

1. The district court's order was erroneous because Congress has rescinded all unobligated ECJ funds. After EPA determined to terminate all ECJ grants, Congress rescinded the "unobligated balances of amounts made available to carry out" the ECJ program. 139 Stat. at 156. EPA has now terminated nearly every grant that was made with ECJ funds, thereby rendering the remaining funds originally attached to each grant unobligated. The moment each set of funds became unobligated, it was rescinded pursuant to Congress's directions.

The district court nonetheless concluded that funds remain available for EPA to award to new grantees because, in the court's view, Congress "only rescinded funds which were unobligated at the time of the bill's passage" on July 4, 2025. App.3 n.1. The court thus apparently believed that funds obligated to grants terminated after (rather than before) July 4 remain available for re-obligation. The court's cramped view of the statute as effecting only a one-time rescission is incorrect. Congress provided that unobligated balances "are rescinded." 139 Stat. at 156. The present tense ("are rescinded") creates a prospective, ongoing rescission applying not just to funds unobligated as of July 4, 2025, but also to funds that become unobligated "now and in the future." *Hicks v. Frame*, 145 F.4th 408, 419 (4th

Cir. 2025); *see also* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise— . . . words used in the present tense include the future as well as the present[.]"). That conclusion is particularly clear in the rescission context, where Congress uses express language when it wishes to specify that it intends to address only balances that are unobligated as of the date of enactment. *See* Pub. L. No. 118-5, div. B, tit. 1, § 1, 137 Stat. 10, 23 (2023).

Context confirms that conclusion. As explained, EPA determined in February 2025 to terminate all ECJ-funded grants, and it began the process of executing those terminations in March 2025—a process that remained ongoing through the rescission. Against that backdrop, Congress's blanket rescission is naturally understood to express agreement with the Administration's policy determination to terminate the program. And that conclusion is reinforced by Congress's decision at the same time to rescind funding for approximately two dozen other environmental- or climate-related funding programs. *See* 139 Stat. at 154-57.

In that context, there is no plausible basis for the district court's apparent view that Congress wanted EPA to issue new grants to replace grants that it terminated after July 4. Nor is there any indication that

Congress wished to treat the funds attributable to grants whose terminations happened to be processed shortly before July 4 differently from those whose terminations happened to be processed shortly after.

In response, plaintiffs fail to engage with those indications of statutory meaning. Instead, they highlight the general principle that a repeal by implication is "not favored." Pet.12 (quotation omitted). But that principle has no relevance here, where Congress has explicitly rescinded unobligated balances.

2. The district court misapplied ordinary APA principles in construing its vacatur of EPA's guidance to operate as a mandatory injunction. The effect of that vacatur is limited: EPA's guidance no longer has legal effect, and EPA may not rely on it. In other words, the vacatur has "re-establish[ed] the status quo absent the" guidance. *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022) (per curiam). The vacatur, however, "neither compels nor restrains further agency decision-making." *Id.*; *see also National TPS All. v. Noem*, 166 F.4th 739, 760 (9th Cir. 2026) ("By its plain terms, a set aside does not affect the Government's future actions."); *Make the Rd. N.Y. v. Noem*, 2025 WL 3563313, at *17 (D.C. Cir. Nov. 22, 2025) (statement of Millett & Childs, JJ.) (similar).

In their petition, plaintiffs nowhere discuss these ordinary APA principles, the upshot of which is that the vacatur affects only EPA's ability to rely on the vacated guidance moving forward. Properly understood, it does not require EPA to take any specific new actions—and it certainly does not require EPA to re-obligate more than $1 billion based on the district court's interpretation of the relevant statutes. Of course, if plaintiffs believe that EPA's actions moving forward violate those statutes, they "may challenge the sufficiency" of those actions through a new claim, which would be evaluated in the first instance through the applicable APA standards. *Asylumworks v. Mayorkas*, 2023 WL 2733722, at *6 (D.D.C. Mar. 31, 2023). But plaintiffs may not leverage the court's "less drastic remedy" of vacatur, *Texas*, 40 F.4th at 219 (quotation omitted), to obtain what is effectively a backdoor affirmative injunction.

3. The district court's misinterpretation of its vacatur as effectively a mandatory injunction requiring EPA to obligate funds is especially problematic in this case because the court could not have properly entered such an injunction—a problem that plaintiffs nowhere grapple with in their petition.

To compel an agency to take a specific action, a court must first conclude that "an agency failed to take a discrete agency action that it is required to take." *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphases omitted). Here, the underlying statute contains no such specific, unequivocal command to obligate any (much less all) of the funds originally appropriated for the ECJ program (even setting aside Congress's more recent rescission).

That statute appropriated $2.8 billion "to award grants" to eligible entities for specified activities. 42 U.S.C. § 7438(a)(1). In general, Congress's "[a]ppropriation of a given amount for a particular activity constitutes only a ceiling upon the amount which should be expended for that activity." H.R. Rep. No. 81-1797, at 9 (1950). It does not constitute a command—much less an unequivocal one—to expend all appropriated funds. *Cf. Train v. City of New York*, 420 U.S. 35, 43-44 (1975). Instead, to communicate such a command, Congress employs express and mandatory language—providing, for example, that the agency must obligate "not less than" a particular amount for an identified activity. *See, e.g.*, Pub. L. No. 118-47, div. F, tit. VII, § 7032(a)(2), 138 Stat. 4680, 786 (2024).

The ECJ statute contains no such language. Nonetheless, plaintiffs have purported to locate the necessary command in § 7438(b)(1)'s language providing that the "Administrator shall use amounts made available" to "award grants" to eligible entities for specified activities. *See* App.37. Plaintiffs misread that language, which is best understood (consistent with appropriations' general nature as ceilings, not floors, on spending) not to require the Administrator to expend all available sums but instead to limit how the funds may be spent: EPA may use them only for the purpose of awarding grants to eligible entities to carry out the specified activities.

That conclusion is particularly evident given the wide-ranging discretion that Congress has provided the Administrator in awarding grants. The decision how to allocate "funds from a lump-sum appropriation" is "committed to agency discretion," because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *see also Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002).

The ECJ statute fits that paradigm. Thus, the statute makes clear that the Administrator may determine which activities "benefit disadvantaged

communities," and the statute provides the Administrator with broad flexibility to exercise his discretion to allocate funds to best achieve that goal as he understands it. 42 U.S.C. § 7438(b). It is thus difficult to imagine that Congress would have intended to require the Administrator to expend all $2.8 billion, even if (for example) he did not believe that there were a sufficient number of worthwhile eligible projects to occupy the full amount. Or if, as happened here, EPA determined (and, as it turns out, Congress subsequently agreed) that continuing to fund climate-justice activities was altogether not a valuable use of taxpayer dollars.

### B. En Banc Review of the Stay Panel's Decision Is Unwarranted

Courts of appeals ordinarily hear cases as panels of three judges. *See* 28 U.S.C. § 46(b). The Federal Rules of Appellate Procedure provide that hearing a case en banc "is not favored." Fed. R. App. P. 40(c). Here, none of the three independent grounds for staying the district court's injunction are worthy of the full Court's review—much less have plaintiffs provided a compelling justification for the en banc Court to review each.

1. Plaintiffs have not persuasively identified any conflict between the stay panel's decision and any decision of this Court or the Supreme Court. Plaintiffs initially claim (Pet.9-11) that the government's arguments are

"incompatible" with *NIH v. American Public Health Ass'n*, 145 S. Ct. 2658 (2025). That argument is hard to follow. *NIH* makes clear that a district court may vacate higher-level "agency guidance" even when that guidance relates to grants. 145 S. Ct. at 2661 (Barrett, J., concurring). But the government has not argued that the district court's vacatur of EPA's guidance was jurisdictionally impermissible (under *NIH* or otherwise), and the panel did not stay that vacatur.

The relevant point instead is that the district court's vacatur does not compel the agency to take specific affirmative steps to comport with the court's understanding of the statute—not because of *NIH* but because of normal APA principles regarding the limited effect of a vacatur, which plaintiffs fail to address in their petition. For the same reason, plaintiffs' citation (Pet.11) of cases from other circuits permitting injunctions requiring agencies to comply with asserted statutory obligations in the grant context is irrelevant. As plaintiffs' description of those cases highlights, they addressed injunctions and thus have nothing relevant to say about the effect of a vacatur.

Plaintiffs make no more headway when they suggest that the stay may conflict with *Climate United Fund v. Citibank*, 2026 WL 2235002 (D.C. Cir.

Aug. 4, 2026) (en banc) (per curiam). There, the court concluded that a different rescission likely does not apply to grant funds that were "already disbursed into [grantees'] bank accounts" and that were associated with grants that were never terminated. *Id.* at *1. The court did not address whether the rescission applies to funds that have become unobligated.

Underscoring the point, in a different case involving ECJ grants, the D.C. Circuit recently vacated the district court's judgment and remanded with instructions to consider whether the claims were moot in light of Congress's rescission. *Appalachian Voices v. EPA*, 2026 WL 2089710, at *1 (D.C. Cir. July 21, 2026) (per curiam). The panel that issued the vacatur order was, naturally, composed of judges that were simultaneously considering the en banc case, and thus presumably regarded the issues as distinct.

2. Plaintiffs' remaining arguments in support of the extraordinary step of rehearing en banc fare no better. First, they contend that the stay "may allow for inconsistent" opinions from this Court. Pet.14-15 (formatting altered). The basis for that contention is the possibility that this Court will issue an opinion in a different case involving ECJ grants—which has not yet been calendared for argument—whose reasoning could conflict with the stay

entered in this case. But of course, it will often be the case that one appeal will involve issues that overlap those presented in other pending cases. Plaintiffs cite no authority supporting en banc review based on the possibility of an inconsistent opinion in a future case. And the possibility that another case presents similar issues undermines plaintiffs' claim that the issues here might go unresolved if the en banc Court does not consider them this month.

Plaintiffs' assertion (Pet.15-16) that the relevant district court orders are not appealable is unpersuasive on its own terms and ultimately self-defeating. Plaintiffs develop no argument that the appellate-jurisdiction issue is itself worthy of en banc review. Nor would any such argument be correct. The panel's exercise of appellate jurisdiction flows naturally from the established principle that an order with "the same practical effect as a preliminary injunction" is "appealable under § 1292(a)(1)" regardless of the label that the court uses. *Abbott v. Perez*, 585 U.S. 579, 595 (2018).

In resisting application of that principle, plaintiffs contend that the district court's order does not "command[]" the government to act but rather "merely acknowledge[s]" a statutory obligation. Pet.16. If that were true, such that the government would not be under a judicial obligation to act even if the court's order were upheld, it would be unclear why this case would

warrant emergency en banc review. But in any event, it is not true. The court has stated that its order requires that "funds must be made available" by EPA "through September 30, 2026." App.13-14. And the court has additionally made clear—at plaintiffs' urging—that it believes EPA would be "defying" its order if EPA acted in accordance with the government's view, rather than the court's view, of EPA's statutory obligations. *Id.*

3. Plaintiffs' brief discussion of this appeal's potentially becoming moot on September 30 (when the original appropriation expires), Pet.15, also does not help their cause. Nothing about that prospect undercuts the panel's stay determination on the merits, nor does it generate the requisite importance to support en banc review. To the contrary, earlier this week, plaintiffs told the district court that they "believe it is extremely unlikely the *en banc* Fourth Circuit could lift the stay in time for Defendants to comply" with the court's orders before "September 30." Dkt.237, at 3. There is no reason for the Court to take the extraordinary step of granting en banc rehearing of a stay when plaintiffs themselves have said (though not to this Court) that such relief would likely not be effective.

And to the extent that plaintiffs believe the possibility of mootness makes the stay inequitable, plaintiffs are wrong. If plaintiffs believe that the

government's actions are not consistent with the terms of their previous grant agreements, plaintiffs may seek damages in the Court of Federal Claims. That possibility does not depend on the original appropriation's remaining available.

Conversely, plaintiffs' blithe suggestion that the government "would not be harmed" without a stay is baseless. Pet.15. EPA has explained in detail how the district court's effective injunction would harm the government. Those harms include the possibility of grantees' irreversibly drawing down substantial funds as well as the extreme administrative burden that would attend requiring EPA to stand up a grant program worth more than $1 billion in the next month—a burden that would likely affect "EPA's ability to meet other statutory obligations, as well as timely obligate appropriated funds other than those at issue in this case." *See* App.44-50. Even the district court recognized that an order requiring EPA to implement the program anew would be "impractical," before turning around and entering exactly that order. App.11.

That harm is particularly unwarranted given that plaintiffs themselves admittedly have no statutory entitlement to any grant funds—and, indeed, had received little more than 2% of the available funds even before ECJ

grants were terminated. App.50. Plaintiffs nowhere even attempt to explain how the equities support their attempt to leverage their asserted contractual interest in a small minority of the available funds into an order requiring EPA to obligate all of them.

## CONCLUSION

For the foregoing reasons, the petition for rehearing en banc of the stay panel's decision should be denied.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

BRYAN P. STIRLING
*United States Attorney*

DANIEL TENNY

*s/ Sean R. Janda*
SEAN R. JANDA
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, D.C. 20530*
*(202) 514-3388*
*sean.r.janda@usdoj.gov*

September 2026

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit established in this Court's order of August 28, 2026, because it contains 3897 words, according to the count of Microsoft Word. This response complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

*s/ Sean R. Janda*
Sean R. Janda